## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-21574-DAMIAN

JANIERKY PEREZ

      Plaintiff,

v.

WATER PRO LLC
and MATTHEW SOCARRAZ, individually,

      Defendants

_____/

### ORDER ON THE PARTIES' JOINT MOTION TO APPROVE SETTLEMENT
### AGREEMENT AND TO DISMISS WITH PREJUDICE [ECF NO. 10]

THIS CAUSE is before the Court on Plaintiff, Janierky Perez's ("Plaintiff" or "Perez"), and Defendants, Water Pro, LLC and Matthew Socarraz's, (collectively, "Defendants"), Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice [ECF No. 10] (the "Joint Motion"). This matter is before the undersigned pursuant to a Joint Notice of Consent to Jurisdiction by United States Magistrate Judge, in which the parties jointly and voluntarily elected to have a United States Magistrate Judge conduct all further proceedings in this case. [ECF No. 17].

THE COURT has considered the Joint Motion, the proposed Settlement Agreement and Release [ECF No. 10-1], the pertinent portions of the record, and the relevant legal authorities. The Court also heard from the parties, who appeared, through counsel, before the Court on July 21, 2022, and is otherwise fully advised in the premises. For the reasons set forth below, the Joint Motion is granted, the Settlement Agreement and Release is approved, and the case is dismissed with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2022, Perez filed a two-count Complaint against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for unpaid overtime wages and retaliation under 29 U.S.C. 215(a)(3). *See* ECF No. 1 ("Complaint"). According to the allegations in the Complaint, Water Pro, LLC ("Corporate Defendant" or "Water Pro") is a water treatment company, and Matthew Socarraz ("Individual Defendant" or "Socarraz") is its "owner/partner/officer and manager." *Id.* at ¶ 4. Defendants employed Perez as a water purification technician from approximately November 15, 2021, to April 14, 2022 – about 21 weeks. *Id.* at ¶¶ 8-9. Perez alleges he was paid $15.00 per hour and worked either 47.5 or 56.5 hours per week but was not always paid for the hours he worked in excess of forty (40) hours per week. *Id.* at ¶¶ 10-15. Perez complained numerous times about missing regular and overtime wages, and he alleges Defendants terminated his employment in retaliation for those complaints. *Id.* at ¶ 68-74.

On June 16, 2022, Perez filed his Statement of Claim. [ECF No. 5 (the "Statement of Claim")]. In the Statement of Claim, Perez alleges he worked for Water Pro, LLC for more than twenty-one (21) weeks, from approximately November 15, 2021, to April 14, 2022, and is owed $5,771.25 in unpaid overtime wages. *Id.* at 2. Perez also seeks $5,400 in lost wages for the nine weeks he was unemployed due to Defendants' alleged retaliation. *See id.* at 3. Along with his claim for $11,171.25 in wages, Perez seeks an equal amount in liquidated damages. *Id.* Therefore, in the Statement of Claim, Perez claims he is owed $22,342.50, comprised of $11,171.25 in unliquidated damages and $11,171.25 in liquidated damages, plus a reasonable amount in attorneys' fees and costs. *Id.*

On July 5, 2022, the parties submitted the Joint Motion now before the Court seeking approval of their proposed settlement agreement, pursuant to *Lynn's Food Stores, Inc.*

*v. United States*, 679 F.2d 1350 (11th Cir. 1982), and dismissal of the action with prejudice. *See* ECF Nos. 10, 10-1.

In the Joint Motion, the parties indicate they reached a settlement in this matter to avoid the costs and uncertainty of litigation. Joint Mot. at 3. Defendants deny any wrongdoing and deny that they owe Perez additional compensation pursuant to the FLSA. *Id.* at 4.

## II.   APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who violates the FLSA is liable to its employee for any unpaid minimum and/or overtime wages, as well as an equal amount in liquidated damages. 29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Nevertheless, there are two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352–53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external" factors). Factors considered "internal" include: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241–44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately

4

and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

## III.   DISCUSSION

With the foregoing in mind, the Court turns to scrutinize the parties' proposed settlement agreement for fairness.

### a.   *The Settlement Amount*

Under the proposed Settlement Agreement and Release [ECF No. 10-1] (the "Agreement"), Defendants agree to pay Perez the total sum of $4,000.00. Agreement at ¶ 3. $2,000.00 shall be allocated in satisfaction of Perez's claim for alleged "unpaid wages", and $2,000.00 shall be allocated in satisfaction of Perez's alleged claim for "liquidated damages." *Id*. As indicated above and in Perez's Statement of Claim, Perez initially sought a total of $22,342.50 for alleged unpaid overtime, lost wages, and liquidated damages such that the settlement amount is approximately eighteen percent (18%) of the total damages originally sought in the lawsuit. *See* Statement of Claim at 3. The Court notes that Perez sought $5,771.25 for alleged unpaid wages and overtime pay for hours allegedly worked but not paid, and, as such, the settlement amount is approximately sixty-nine percent (69%) of that amount.

Both parties are represented by counsel and agree the negotiated terms of the Agreement are fair and equitable considering the strengths and weaknesses of the parties' respective positions. *See* Joint Mot. at 7.

The Court has scrutinized the terms of the Agreement and considered the above referenced factors. Based on the parties' representations and their expressed concerns regarding the alleged FLSA claims, the Court finds the settlement amount represents a fair and reasonable resolution of a bona fide dispute between the parties under all the

circumstances presented and that Perez has not unfairly compromised his FLSA claims. The Court also finds the Agreement promotes the policy of encouraging settlement of litigation of FLSA claims. *Lynn's*, 679 F.2d at 1354.

Having found the settlement amount is fair and reasonable, the Court addresses the specific terms of the Agreement.

### b. *Attorneys' Fees*

In an FLSA action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As part of the Agreement, separate and apart from the amount paid to Perez, Defendants will pay Perez's counsel $3,250.00 in attorney's fees and $500.00 in costs. The Joint Motion and Agreement state that this amount was negotiated separately from the amount paid to Perez for his FLSA claims, such that Perez agreed the settlement amount was fair separate and apart from consideration of the fees and costs paid to his counsel.

The Court has reviewed counsel's billing records and finds the amount billed, including the number of hours expended (twelve) and the hourly rate ($400/hour), is reasonable based on the facts and circumstances of this case. *See* Joint Motion at ¶¶ 7-8. Moreover, based on the parties' representation that Perez's attorney's fee was agreed upon separately and without regard to the settlement amount paid to Perez, and finding the Agreement is otherwise reasonable on its face, the Court finds Perez's recovery was not adversely affected by the amount of fees paid to his attorney. Therefore, the Court may approve the Agreement without separately considering the reasonableness of the fee to be paid to Perez's counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Even so, the Court finds the fees to be paid to Perez's counsel, including the number of hours expended (twelve) and the hourly rate ($400/hour), are reasonable under

the circumstances presented. The Court may rely on its own experience in determining reasonableness of fees and does so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Accordingly, the Court finds the fees to be paid to Perez's counsel pursuant to the Agreement are reasonable and have not adversely affected the amounts paid to Perez under the Agreement.

### c. *General Mutual Release*

The Agreement also provides for mutual general releases of all claims the parties may have against each other. Agreement at ¶¶ 12-13.

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010) (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL 549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-

60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint motion to approve FLSA settlement where "the Agreement contains unbounded and pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

The Court has reviewed the terms of the mutual general releases, and addressed the general releases with the parties, through counsel, during the Fairness Hearing. Counsel represented that the releases were a significant factor in the parties' negotiations and that the settlement amount is partly attributable to the inclusion of the releases. The Court also notes that the releases exclude claims related to Perez's pending workers' compensation claim. Agreement at ¶¶ 12-13. Based on the foregoing, the Court finds that the general releases do not undermine the fairness of the Agreement.

### d.  *No Re-Employment Provision*

The Agreement also contains a "No Re-Employment" provision in which Perez "represents and agrees that he is waiving all rights to employment or to be considered for employment . . . with Defendants." Agreement at ¶ 4. The Joint Motion does not address this provision nor whether additional consideration was provided to Perez for it.

As the Middle District has specified, "an agreement not to employ a plaintiff in the future plainly injures the plaintiff, and when the parties' briefing does not address the issue of additional consideration, courts cannot determine whether the inclusion of such provision in a settlement agreement represents a fair and reasonable resolution of the parties' FLSA dispute." *Duffey v. Surfside Coffee Co.*, No. 20-cv-501, 2022 WL 766904, at *4

(M.D. Fla. Jan. 1, 2022) (citation and internal quotation marks omitted). Such provisions, nonetheless, may be approved where supported by sufficient additional consideration. *Id.* Moreover, "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Holmes v. Swissport Fueling, Inc.*, No. 16-cv-669, 2019 WL 1370542, at *6 (M.D. Fla. Mar. 11, 2019) (citation omitted); *see also Cruz v. Winter Garden Realty, LLC*, No. 12-cv-1098, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair.").

Here, as with the general release, the Agreement does not explicitly identify separate consideration for Perez's waiver of future employment with Defendants. However, during the Fairness Hearing, the Court addressed this provision with counsel, both of whom agreed the provision enabled the parties to reach swifter resolution. Moreover, Perez's counsel asserted that Perez fully understands the provision and its implications and has no interest in seeking future employment with Defendants. Accordingly, the Court finds the inclusion of a waiver of future employment provision, despite the lack of additional consideration, does not undermine the fairness of the Agreement under the circumstances presented.

### e.  *Non-Disclosure and Non-Disparagement*

The Agreement contains a non-disclosure provision prohibiting Perez, his attorneys, or his family members from disclosing the terms and conditions of the Agreement, with some exceptions. Agreement at ¶ 6. In addition, the Agreement contains a provision stating that Perez agrees he will not make any negative or disparaging remarks about Defendants. *Id*. at ¶ 7.

"A confidentiality provision in an FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA right." *Mingo v. Ironclad Projects, LLC,* No. 19-CIV-62202-RAR, 2021 WL 8894997 at *4 (S.D. Fla. March 1, 2021) (quoting *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)). Courts in the Eleventh Circuit routinely reject such non-disclosure and non-disparagement clauses contained in FLSA settlement agreements because they "thwart Congress's intent to ensure widespread compliance with the FLSA." *Pariente v. CLC Resorts and Developments, Inc.,* No. 6:14–cv–615–Orl–37TBS, 2014 WL 6389756, at *5 (M.D.Fla. Oct. 24, 2014). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g,* Inc., 960 F.2d 1013, 1016 (11th Cir. 1992)).

However, during the Fairness Hearing, the Court addressed this provision with counsel, both of whom agreed the provision enabled the parties to reach swifter resolution. Moreover, the Court notes that the parties did file the Agreement in the public record, which alleviates concerns regarding public interests. And, Perez's counsel asserted that Perez fully understands the provisions and their implications and pointed out that

Defendants have likewise agreed to maintain the Agreement's confidentiality and to refrain from providing negative comments to any employer seeking a reference on Perez. Agreement at ¶ 11. Accordingly, the Court finds the inclusion of the non-disparagement and non-disclosure provisions, despite the lack of additional consideration, do not undermine the fairness of the Agreement under the circumstances presented.

### f.  Retention of Jurisdiction

Finally, the parties request the Court reserve jurisdiction to enforce the terms of the Agreement. "To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz*, LLC, 677 F.3d 1272, 1279 (11th Cir. 2012).  Noting that the parties filed the Agreement in the Court's docket, the Court finds the request to reserve jurisdiction to enforce the terms of the Agreement is reasonable.

## IV.  FINDINGS

The Court has considered the factors outlined in *Lynn's Food Stores*; the factual positions of the parties; the existence (or lack thereof) of documents supporting or corroborating the parties' positions; the strengths and weaknesses in the parties' respective positions; and the parties' desires to resolve their disputes without protracted litigation.

As set forth above, the Court finds that the settlement represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Perez more than they believe Perez is due under the law. The parties have agreed to settle because of reasonable strategic and financial considerations.

The Court also finds that the settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court further finds that the settlement reached by the parties represents a reasonable compromise by both sides and

is fair and reasonable and that the amount claimed as payment for Perez's counsel's fees and costs is also reasonable.

## V.    CONCLUSION

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that the Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice [ECF No. 10] is **GRANTED**. The Parties' Settlement Agreement and Release is **APPROVED** as fair and reasonable. It is further

ORDERED AND ADJUDGED that this case be **DISMISSED WITH PREJUDICE**. It is further

ORDERED AND ADJUDGED that the Court retains jurisdiction to enforce the terms of the Settlement Agreement. It is further

ORDERED AND ADJUDGED that the Clerk shall CLOSE this case, and all pending motions, if any, are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers at Miami, Florida this 22st day of July 2022.

_____

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:  Counsel of Record